[No. 3025. Decided January 6, 1899.]

JOHN H. GRAHAM, *Respondent,* v. E. McNEILL, *as Receiver of the Oregon Railway and Navigation Company, Appellant.*

CARRIERS—DUTY TO PROVIDE SEATS—PASSENGERS RIDING ON PLATFORM —WAIVER OF RULES—CONTRIBUTORY NEGLIGENCE.

It is not negligence *per se* for a passenger to ride upon the platform of a passenger car, but, if he is injured while occupying that position, it is a question for the jury, whether his own negligence or that of the railway company is the proximate cause.

Where a railway company does not provide sufficient cars for its passengers, but compels some to ride upon the platform through the lack of accommodations, it is such negligence as will render the company liable for injuries received by any of the passengers riding there, when they are otherwise free from negligence themselves.

When a railroad company fails to provide suitable accommodations for its passengers inside its coaches, its action in receiving them on its train constitutes a waiver of its rule against passengers standing on the platforms.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Affirmed.

*Cotton, Teal & Minor,* for appellant:

It is *prima facie* negligence, as a matter of law, for a passenger to stand upon the platform of a railway train, and where such riding is plainly the cause of the passenger's injury he is guilty of negligence as a matter of law, and where such riding is not plainly the cause of the injury the question of contributory negligence is left to the jury. It being *prima facie* negligence to stand upon the platform, it at once follows that where the passenger has been thrown from the platform by some sudden jolt or lurch of the cars, there can be no recovery, as a matter of law, for the reason

that the act of the passenger is the sole and only cause of his injury. In such cases the passenger cannot claim that the jerking and lurching of the train constitutes negligence. This is true for the reason that such jerking and lurching must be anticipated by a reasonably prudent man, and is therefore one of the consequences to which the passenger subjects himself when he undertakes to stand upon the platform.

An overcrowded condition of the cars preventing the passenger from obtaining a seat therein does not justify a passenger taking a position of known danger upon the platform. When the seats are full the railway company may have committed a breach of its contract to carry, but such breach does not justify the negligence of the passenger in occupying a position of danger upon the platform.

Knowledge on the part of a conductor does not justify a passenger in occupying a position of known danger upon the train. The conductor's knowledge neither increases nor decreases the passenger's danger.

In support of the foregoing general propositions, the attention of the court will be called to a few cases, some of which are strikingly similar in their facts to the one presented by this appeal. *Camden & Atlantic Ry. Co. v. Hoosey,* 99 Pa. St. 492 (44 Am. Rep. 120) ; *Saunders v. Chicago & Northwestern Ry. Co.,* 60 N. W. 148; *Etson v. Ft. Wayne, etc., Ry. Co.,* 68 N. W. 298; *Bemiss v. New Orleans City & Lake Ry. Co.,* 18 South. 711; *St. Louis & Southwestern Ry. Co. v. Rice,* 29 S. W. 525; *Aufdenberg v. St. Louis, I. M. & S. Ry. Co.,* 34 S. W. 485; *Worthington v. Central Vermont R. R. Co.,* 52 Am. & Eng. R. R. Cases, 384 (15 L. R. A. 326) ; *Goodwin v. Boston & Maine R. R. Co.,* 52 Am. & Eng. R. R. Cases, 380; *Jackson v. Crilly,* 26 Pac. 331; *Pennsylvania R. R. Co. v. Langdon,* 92 Pa. St. 21 (37 Am. Rep. 651) ; *Hickey v. Boston & L. R. R. Co.,* 14 Allen, 431; *Graville v. Manhattan R. R.*

*Co.,* 105 N. Y. 527 (59 Am. Rep. 516); *Cleveland, etc., Ry. Co. v. Moneyhun,* 44 N. E. 1106 (34 L. R. A. 141).

*M. O. Reed (Craven & Canfield,* of counsel), for respondent:

It is not negligence *per se* for a passenger to stand upon the platform of a railway train while in motion. *Chicago & Alton R. R. Co. v. Fisher,* 141 Ill. 614; *Choate v. Missouri Pacific Ry. Co.,* 67 Mo. App. 105; *Cotchett v. Savannah & T. Ry. Co.,* 11 S. E. 553; *Zemp v. Wilmington, etc., R. R. Co.,* 64 Am. Dec. 765; *Nolan v. Brooklyn City & N. R. R. Co.,* 87 N. Y. 67 (41 Am. Rep. 345); *Dickinson v. Port Huron & N. W. Ry. Co.,* 53 Mich. 44; *Louisville, etc., Ry. Co. v. Patterson,* 69 Miss. 421 (22 L. R. A. 259); *McAfee v. Huidekoper,* 34 L. R. A. 720; *Chesapeake & O. Ry. Co. v. Clowes,* 24 S. E. 833; *Atchison, etc., R. R. Co. v. McCandliss,* 33 Kan. 366.

The opinion of the court was delivered by

REAVIS, J.—Action to recover damages for personal injuries sustained by plaintiff while passenger on a railway train operated by defendant. The complaint alleges that on the 7th of October, 1895, at the town of Oakesdale, plaintiff purchased from an agent of defendant an excursion ticket which entitled plaintiff to be transported as a passenger from Oakesdale, in the state of Washington, to the city of Spokane and return, on or before the 9th day of October, 1895; that plaintiff was transported according to the terms of the ticket to Spokane, and on the 9th of October, 1895, while returning home, at the instance and request of defendant and pursuant to the terms of the ticket, plaintiff entered one of the coaches of defendant's train carrying passengers from Spokane to Oakesdale, and by reason of the very crowded condition of the cars was unable to obtain a seat or room in any one of defendant's

coaches and was compelled to ride, and did ride, upon the platform of one of the cars of the train; and while so riding the conductor permitted, compelled and allowed the plaintiff to occupy such position upon the platform without objection or protest, well knowing at the time the overcrowded condition of each and every one of the coaches in said train; and while the plaintiff was standing as aforesaid on the platform, by reason of the negligent, irregular, improper, overcrowded, overloaded and careless manner in which the said train was being run by the defendant and the dangerous positiᴏn which the plaintiff was forced to occupy by reason of the overcrowded condition of the cars, he was, by a sudden careless and unnecessary lurch of the train, caused by the carelessness of the defendant, his servants and employees, in the management and operation of said train, thrown from the platform to the ground in a violent manner, and sustained serious injuries. The answer denies all of the allegations of negligence and damage contained in the complaint and sets up an affirmative defense, and, in substance, states contributory negligence, by allegations that the plaintiff was drinking when he left Spokane, and continued to drink, and was so far under the influence of liquor as to be intoxicated, and that such intoxication was not known to the defendant; that, after the train left, the plaintiff was standing upon the platform in a position where, if he had exercised care in preserving his balance, he would not have been injured; that while so standing on the platform the plaintiff's hat was blown off by the wind, and the plaintiff negligently and carelessly released his hold upon the railing of the car and with his right hand undertook to catch his hat, and in so doing lost his balance, fell from the platform to the ground, and was thereby injured; and that the plaintiff was not thrown from the platform by a careless or unnecessary, or any, lurch of the train; that while so standing and

exercising care the plaintiff was in a safe position, where he could not have received the injuries complained of. The answer also affirmatively contains the following allegation: that the fact that the plaintiff was occupying the platform was not known to any of the defendant's agents or servants, and that the position occupied by the plaintiff upon the platform was not dangerous to any person occupying the same and exercising reasonable care and prudence. The plaintiff's reply merely denies each and every allegation of new matter contained in the separate defense of the answer. Evidence was submitted by both parties upon the issue of contributory negligence tendered by the defendant; upon the part of plaintiff, that he exercised due care while standing on the platform; and by defendant, some evidence tending to show that plaintiff attempted to catch his falling hat and thereby fell. No evidence was directly introduced as to whether the platform, under the circumstances, was in itself a dangerous place, or otherwise. The evidence showed that an excursion train was advertised and passengers invited to procure tickets therefor from Oakesdale to Spokane, to visit the fruit fair in the latter city; and the advertisement also requested the passengers to notify the agent, so that necessary equipments could be ordered. A large number of passengers were carried to Spokane between Monday, the 7th, and the 9th of October. On the 9th the railroad company carried a crowd of people home on twelve coaches, drawn by one engine. The evidence tends to show that all the seats were occupied and that the aisles were very much crowded, in the respective coaches, and that people were riding on all the platforms of the train. The plaintiff got on the train at Spokane on the 9th and passed through six crowded coaches, looking for a seat. The aisles were crowded with people standing along between the seats and leaning over upon them. The plaintiff then took a position on the platform at the rear

end of the coach, where he stood.   There were six other passengers standing between the two coaches, one or two of them being ladies; and there were ladies generally, as well as men, carried on a number of the platforms of the coaches.   The conductor took up the ticket of plaintiff while he was standing upon the platform, and said nothing about the position which plaintiff or any one else occupied on the platform.   While the train was going at considerable speed, and on rather an incline, use of the air brake caused the coach on the platform of which plaintiff was standing to jolt or lurch, and plaintiff was thrown from the train and injured.   After the introduction of testimony on the part of the plaintiff had been concluded, defendant moved for a non-suit, which was overruled; and thereafter, at the conclusion of the case, defendant asked for an instruction for a verdict for itself, which was refused.   A verdict was returned for plaintiff and judgment entered thereon.

A number of objections were taken to the instructions of the court by the counsel for the defendant, and also objections to refusal by the court to give instructions tendered by counsel for defendant.   Instructions which are deemed material here were given as follows:

" Now, gentlemen of the jury, if you find from the evidence in this case that the plaintiff was a passenger upon this train at the time alleged, and that he fell, or was thrown from the train, or from the platform, as alleged in both the complaint and answer, I believe, of one of the coaches, it is for you to determine from the evidence in this case, first, as to whether or not the plaintiff was on that platform from his own choice, or whether or not the cars of the defendant upon that occasion were crowded in such a condition that it necessitated him to take up a position upon the platform in question in order to ride from Spokane to Tekoa.

" Now, you are further instructed by the court, that if you find from the evidence in this case, that there was no

room inside of the cars for the plaintiff to either sit or stand, or that there was any other reason justifying the plaintiff in remaining upon the platform, I charge you that it was, even under such circumstances, necessary for the plaintiff while he was standing upon the platform, to take reasonable precaution to prevent being thrown from the train by the motion thereof from where he was; and if you find from the evidence that the plaintiff failed to take such precaution and by reason of such failure was thrown from the train by the motion thereof, which could reasonably be expected when running, then I charge you that the plaintiff cannot recover and you must find for the defendant.

" The jury are further instructed that it is the duty and obligation of a common carrier of passengers for hire, to furnish passengers with seats for their accommodation; and if you find from the testimony in this case that the defendant in this case received the plaintiff as a passenger, the plaintiff thereby became entitled to a seat in one of the cars of the defendant's train, and it is not the duty of the plaintiff to go from car to car while the train is in motion to find a seat, and if the defendant received the plaintiff as a passenger and failed to furnish plaintiff with a seat, then the court instructs you that it was not negligence for the plaintiff to take a position upon the platform of one of the defendant's cars, provided that said position was one where a person exercising ordinary care and prudence would be safe from injury if the train of the defendant were run in a careful manner.

" The jury are further instructed that if you find from the evidence in this case that the defendant failed to furnish accommodations for the passengers on the train mentioned, so that a large number of passengers upon that train were compelled to stand in the aisles and upon the platforms of those cars, then you must find that the defendant was guilty of negligence; and if you find that the defendant was guilty of negligence, you cannot find that the defendant is liable to the plaintiff in this action, unless you find the plaintiff himself was free from negligence upon his part.

" The jury are instructed that if there were no vacant

seats in the car of defendant, the plaintiff is not charge-
able with negligence in standing on the platform of the car
of the defendant, providing that you find that was the most
comfortable and convenient place for the plaintiff to oc-
cupy on the trip, and the defendant is not absolved from
liability for injury to a passenger while riding on the plat-
form of a car, unless the defendant provided room inside
of the car for the proper accommodation of the passengers,
and that a mere space on the inside in which to stand be-
tween the seats is not ordinarily such proper accommoda-
tion.   If the jury find from the evidence in this case that
there were in fact no vacant seats in the car of the defend-
ant, it is for you to determine whether it was negligence
on the part of the plaintiff to stand on the platform, even
if there was room to stand in the inner gangway.

"And you are further instructed that in no case can you
find for the plaintiff, unless you find that the defendant
was guilty of some negligence by himself or some of his
agents or servants.

" If the defendant was guilty of negligence in furnish-
ing seats for the passengers, including the plaintiff, but
the plaintiff through his own carelessness and negligence
caused the injury, then you should find for the defendant."

The court, at the request of defendant, gave the follow-
ing instruction:

" If you find from the evidence that there was no room
inside the car for the plaintiff to either sit or stand, or that
there was any other reason (to) justify the plaintiff in
remaining upon the platform, I charge you that it was,
even under such circumstances, necessary for the plaintiff
while he was standing upon the platform to take reason-
able precaution to prevent from being thrown from the
train by the motion thereof while running; and if you find
from the evidence that the plaintiff failed to take such
precaution, and by reason of such failure was thrown from
the train by the motion thereof, reasonably to be expected
when running, then I charge you that the plaintiff cannot
recover and you must find for the defendant."

The testimony discloses that notices were posted on the
coaches of defendant's train that passengers must not stand

on the platform, and that passengers were not allowed to go upon the platform of the car while the train was in motion.

It will be observed that the complaint charged that, while the plaintiff was standing on the platform, by reason of the careless manner in which the train was being run and the dangerous position which the plaintiff was forced to occupy by reason of the overcrowded condition of the cars, he was, by a sudden, careless and unnecessary lurch of the train, caused by carelessness of the defendant in the operation of the train, thrown from the platform to the ground in a violent manner. And the answer, after denying the negligent acts charged in the complaint, alleges that the position occupied by plaintiff upon the platform was not dangerous to any person occupying the same and exercising reasonable care and prudence, and that plaintiff was standing upon the platform in a position where, if he had exercised care in preserving his balance, he would not have been injured. An inspection of the record at the trial indicates that the theory upon which the defense was conducted was that the plaintiff contributed to the falling from the train by his own carelessness in balancing and standing upon the platform. The question of the occupation of the platform by plaintiff in itself being dangerous was not particularly brought to the attention of the court or jury until instructions were requested. It was insisted by the defendant, however, during the trial, that it was not negligence contributory to the accident, on the part of the defendant, to fail to have the necessary cars and provide the necessary accommodations for its passengers returning from Spokane on the 9th of October. Counsel for defendant now urge that it is *prima facie* negligence, or negligence *per se,* as a matter of law, for a passenger to stand upon the platform of a railway train in motion, and that, where such position is plainly the cause of the passenger's

injury, he is guilty of negligence, as a matter of law, and that, where such position is not plainly the cause of the injury, the question of contributory negligence should be left to the jury as a fact, and the familiar rule is stated that every man in the possession of his faculties is responsible for the consequences reasonably to be anticipated from his own acts, and it is contended that reasonably prudent men do not, under ordinary circumstances, stand upon the platforms of trains in motion, and, when the passenger is thrown from the platform by some sudden lurch or jerk, then his standing upon the platform is plainly the cause of his injury; and many cases are cited by counsel, some of which sustain their contention, but some of which are upon facts essentially different from those in the case at bar.   For illustration, in the case of *Cleveland, C. C. & St. L. Ry. Co. v. Moneyhun,* 146 Ind. 147 (44 N. E. 1106), the plaintiff went out, not upon the platform, but upon the lower steps of the platform, and leaned over, and by a lurch of the train was thrown therefrom.   A number of cases are also cited upon the presumption of negligence from the happening of the accident, and the presumptions arising therefrom, and also other cases where proper accommodations were provided for the passenger inside the coach, and he left and went out, and stood on the platform.   But none of the cases examined are exactly in point with the facts under consideration here.   In Hutchinson on Carriers (2d ed.), § 652, it is stated:

" Whether standing upon the platform of a railway car voluntarily, and without any necessity for so doing, would be evidence of the want of such due and reasonable care on the part of the passenger as would exonerate the company from liability in case of an accident resulting in his injury, would of course depend upon all the circumstances, and would be the proper subject of inquiry by a jury."

See *Willis v. Long Island R. R. Co.*, 34 N. Y. 670; *Werle v. Long Island R. R. Co.*, 98 N. Y. 650; *Graham v. Manhattan Ry. Co.*, 149 N. Y. 336 (43 N. E. 917); *Merwin v. Manhattan Ry. Co.*, 113 N. Y. 659 (21 N. E. 415).

Beach on Contributory Negligence (2d ed.), § 149, says:

" It is not negligent *per se* for a passenger to ride upon the platform of a railway car; nor is it negligence to stand upon the platform of cars in motion when there are no vacant seats inside the car."

In*Willis v. Long Island R. R. Co.*, 34 N. Y. 670, it was said:

" There is no rule of the common law which makes it the duty of the passenger to the carrier to select a position in the vehicle least exposed to danger through the wrongful act of the proprietor. A seat on the outside of a stage coach may be more hazardous than an inside seat if the driver negligently overturns it on a pavement or a hill side; but the selection of that position is neither negligence *per se* nor tributary in a legal sense to the injury."

Mr. Justice MILLER, in *Marquette v. Chicago & N. W. R. R. Co.*, 33 Iowa, 564, said:

" It is not, at common law, necessarily negligence in a passenger to ride on the platform of a car. *Meesel v. Lynn, etc., R. R. Co.*, 8 Allen, 234. It certainly is not improper for him to do so if he cannot get a seat inside. Shearm. & Redf. on Neg. § 284. Nor is it negligence in passengers, unable to find seats in a car, to pass into another, by direction of the conductor, while the train is in motion. *McIntyre v. N. Y. C. R. R. Co.*, 43 Barb. 532. For while moving from one car to another, without cause, while a train is in motion, may be negligence; yet, if a passenger does so in obedience to a direction or request of the officer in charge of the train, the act may be deemed consistent with proper care, since passengers have a right to rely on the judgment of the officers of the train in respect to such matters, and are bound to obey the reasonable directions of such officers. Shearm. & Redf. on Neg. § 285.

"In judging of what is negligence in a particular case regard is to be had to the growth of science and the improvement of the arts which take place from time to time; for many acts or omissions which are now evidence of gross negligence were but a few years ago consistent with great care and skill. And, on the other hand, many things, which a few years since would have been considered negligence, are now consistent with proper care and skill. Shearm. & Redf. on Neg. § 7. And especially is this true in respect to railroad carriages which within a few years have been transformed from crude and clumsy cars into magnificent traveling palaces, supplied in many cases with the comforts, conveniences, and even luxuries of elegant dwellings, in which the public may travel at a speed and with a degree of safety which thirty years ago would have been in the highest degree perilous to life and limb. And within a very short period there have been such wonderful improvements in the platforms and couplings of railway passenger coaches as that passengers may, with comparative safety, pass from the other cars of a train to the sleeping and dining coaches, on some of the fastest trains of this country, while in motion.

"Daily, ladies, with and without gentlemen, by hundreds pass from car to car, and especially to sleeping and dining coaches while the train is moving at a rate of speed much above twenty miles an hour, and yet accidents from this practice seldom occur. It cannot be true, therefore, *as a matter of fact,* that to pass from one car to another, while the train is in motion at the usual rate of speed is so necessarily dangerous that it may not be justified under any circumstances; nor can it be true as *a fact,* that the removal of a passenger from one car to another, while the train is moving at its regular speed, is so necessarily dangerous as that it cannot lawfully be done by the officer in charge of the train, under any circumstances, or for any cause. But if the fact were otherwise it should be left to the jury to find upon the evidence, and it is not the province of the court to pronounce it so as matter of law."

Wood on Railroads, § 308, declares the rule:

"A railroad company is bound to furnish its passengers

reasonable and proper accommodations for travelling, and if it has an insufficient number of cars, so that the passengers are *compelled to ride upon the platform,* it is liable for injuries received by them while riding there."

See, also, § 309 as to the duty of the railroad company to furnish each passenger with a seat. It cannot be successfully maintained now that the platform of a railway train is necessarily such a position of danger that no ordinarily prudent person would go upon it while the train was in motion. Such contention would be false to common experience in railway travel. Prudent and careful persons do frequently go across platforms of moving trains, and do stand upon them; and the conductors of trains do collect fare from passengers upon platforms, and frequently on ordinary roadways, and in first class passenger coaches, do not take any notice of such position of travelers. As observed by some of the courts, the modern improvements for safety in coaches, platforms, train appliances and roadways have largely modified the risk of standing on the platform. But the defendant in this instance had a notice to the passengers to keep off the platform. Companies may make reasonable rules, and the passenger must obey them. Such a rule could doubtless be enforced, but such rules may also be waived by the acts of the company. Hutchinson on Carriers, *supra,* very fairly states the rule. But the defendant in this case waived its notice against standing on the platform when it failed to provide suitable accommodations for the plaintiff inside its coaches, and yet received him on its train. In the case of *McQuillan v. Seattle,* 10 Wash. 465 (45 Am. St. Rep. 799, 38 Pac. 1120), it was said:

" Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury."

The evidence discloses clearly that defendant was negligent in its duty to the passenger when the train left Spokane in its overcrowded condition. Not only did it not furnish seats for the passengers, but the passage ways inside the coaches were crowded by standing passengers, and the platforms had men and women standing thereon who could not be accommodated inside the coaches; and, as has been observed by some of the authorities, it is the duty of the conductor to seat passengers. The instructions given by the superior court are not phrased in happy terms, perhaps; but, taken altogether, the question of contributory negligence, and also of the principal negligence, was fairly submitted to the jury, and the case cannot be reversed because the language used in the instructions was not aptly chosen and may be open to criticism.

The judgment is affirmed.

ANDERS, DUNBAR and GORDON, JJ., concur.